# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| VICKI L. GLASCO | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: CIV-13-130-C |
| | ) | |
| ADVANCED DENTAL IMPLANT & | ) | |
| DENTURE CENTER, LLC, d/b/a MY DENTIST; | ) | |
| ADVANCED DENTAL IMPLANT | ) | |
| AND DENTURE, INC.; and | ) | |
| MY DENTIST HOLDINGS, LLC | ) | |
| Defendants. | ) | |

---

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS
## AND SUPPORTING BRIEF

---

Robert S. Lafferrandre, OBA 11897
Randall J. Wood, OBA No. 10531
Jessica L. Speegle, OBA # 31236
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.
Post Office Box 26350
Oklahoma City, Oklahoma  73126-0350
Telephone:   (405) 235-1611
Facsimile:    (405) 235-2904
rlafferrandre@piercecouch.com
rwood@piercecouch.com
*Attorneys for Defendants*

January 7, 2014

## **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................... 1

II.    STATEMENT OF UNDISPUTED FACTS............................................... 3

III.   ARGUMENT & AUTHORITY .................................................................13

     Proposition I        Plaintiff Has Failed to Establish a Prima Facie Case of Retaliation..................................................13

     Proposition II      Plaintiff's Retaliation Claims Under "Public Policy" Fail ..............................................................18

     Proposition III     Defendants Have Stated Legitimate Nondiscriminatory Reasons for any Adverse Employment Action ...............................................23

     Proposition IV     Plaintiff Has Failed to Show "Pretext".....................................25

IV.   CERTIFICATE OF SERVICE ..................................................................29

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Coors Brewing Co.*, 181 F.3d 117(10th Cir. 1999)..............................................27

*Annett v. Univ. of Kansas*, 371 F.3d 1233(10th Cir. 2004).......................................................26

*Argo v. Blue Cross & Blue Shield of Kan., Inc.,* 452 F.3d at 1202 ...........................................14

*Barber v. CSX Distribution Svcs.,* 68 F.3d 694(3d Cir. 1995)...................................................15

*Bd. of Trustees of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 n.2 (1978) ....................24

*Brown v. Bd. of Regents*, 353 Fed.Appx. 169(10th Cir. 2009) .................................................21

*Crawford v. Metropolitan Gov't. of Nashville and Davidson Cnty., Tenn.,*
   555 U.S. 271(2009)...........................................................................................................15

*Crowe v. ADT Sec. Services, Inc.*, 649 F.3d 1189 (10th Cir. 2011).........................................25

*Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.,* 450
   F.3d 130(3d Cir. 2006).....................................................................................................15

*Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620 (10th Cir. 2012).....................................25

E.E.O.C. v. C.R. England, Inc., 644 F.3d 1028 (10th Cir. 2011)..................................... 24, 26

*E.E.O.C. v. Flasher Co.*, 986 F.2d 1312(10th Cir.1992)........................................................ 25,26

*Eke v. CaridianBCT, Inc.,* 490 Fed.Appx. 156(10th Cir. 2012)...............................................20

*Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217 (10th Cir. 2008)........................13, 19, 26

*Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187 (10th Cir. 2008)...................................20

*Hysten v. Burlington Northern & Santa Fe Ry.,* 296 F.3d 1177(10th Cir.
   2002)............................................................................................................................ 16, 17

*Jenkins v. Legend Senior Living, L*LC, 2012 U.S. Dist. LEXIS 70114, 2012
   WL 1865394, at *7 (N.D. Okla. May 21, 2012).........................................................22

*Jones v. City of Mount Vernon*, 114 F. Supp. 2d 274 (S.D.N.Y. 2000) ...................................18

*Kendrick v. Penske Transp. Services, Inc*., 220 F.3d 1220 (10th Cir. 2000) .....................24

*Kendrick v. Penske Transp. Servs., Inc*., 220 F.3d 1220 (10th Cir. 2000) ..........................25

*Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012) ........................................... 13, 19

*Malone v. MAPCO, Inc.*, No. 91-5073, 1992 WL 26788 (10th Cir. Feb. 11, 1992) ..................................................................................................................................21

*Malone v. MAPCO, Inc.*, No. 91-5073, 1992 WL 26788, at *1 (10th Cir. Feb. 11, 1992) ...........................................................................................................................21

*Mazzanti v. City of Owasso*, 2012 U.S. Dist. LEXIS 89457, 2012 WL 2505504, at *1 (N.D. Okla.
June 28, 201222

*McCully v. Am. Airlines, Inc*., 695 F. Supp. 2d 1225 (N.D. Okla. 2010) ...............................21

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973) ............................24

*McDonnell Douglas*, 411 U.S. at 802; ................................................................................24

*Meiners v. Univ. of Kan*., 359 F.3d 1222 (10th Cir. 2004)................................................ 13, 19

*Miller v. Eby Realty Group, LLC,* 396 F.3d 1105 (10th Cir. 2005) .........................................25

*Pastran v. K-Mart Corp*., 210 F.3d 1201 (10th Cir. 2000)...........................................................27

*Peters v. Black Tie Value Parking Serv., Inc*., CIV-12-809-D, 2013 WL 149773 (W.D. Okla. Jan. 14, 2013)................................................................................22

*Petersen v. Utah Dept. of Corr.,* 301 F.3d 1182.............................................................................15

*Piercy v. Maketa,* 480 F.3d 1192, 1198 (10th Cir. 2007) .........................................................16

*Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000) ...............................24

*Rivera v. City & County of Denver*, 365 F.3d 912(10th Cir. 2004) .........................................26

*Ruleford v. Tulsa World Publ'g Co*., 266 Fed.Appx. 778 (10th Cir.2008)...........................21

*Smith v. Okla. ex rel. Tulsa County Dist. Attorney*, 245 Fed.Appx. 807 (10th Cir.2007...........................................................................................................21

*Smith v. Okla. ex rel. Tulsa County Dist. Attorney*, 245 Fed.Appx. 807 (10th Cir.2007)..........................................................................................21

*Smith v. Progressive Stamping and Plating, Inc.*, No. 05-1262, 2006 WL 1895468, at *4 (W.D. La. July 7, 2006)............................................... 17, 18

*Swackhammer v. Sprint/United Mgmt. Co*., 493 F.3d 1160(10th Cir. 2007)...........................................................................................................25

*Timmerman v. U.S. Bank, N.A*., 483 F.3d 1106 (10th Cir. 2007).........................................25

*Tran v. Trustees of State Colleges in Colorado*, 355 F.3d 1263(10th Cir. 2004)...........................................................................................................27

*Upshaw v. Ford Motor Company*, 576 F.3d 576 (6th Cir. 2009)...........................................24

*Young v. Dillon Cos*., 468 F.3d 1243, 1250 (10th Cir. 2006).....................................26

*Zokari v. Gates,* 561 F.3d 1076, 1081 (10th Cir. 2009)..............................................14

## Statutes

25 O. S. § 1350(A).............................................................................................. 21, 22

25 O.S.  §§ 1101(A), 1350(A) ...........................................................................21

85 O.S. § 341 .....................................................................................................18

85 O.S. § 5..........................................................................................................18

## Other Authorities

42 U.S.C. § 2000e-3......................................................................... 14, 15, 16, 20

42 U.S.C. §2000e-....................................................................................................16

## INDEX OF SUPPORTING EXHIBITS

Exhibit 1.    Charge of Discrimination

Exhibit 2.    Plaintiff's Deposition

Exhibit 3.    Plaintiff's Petition

Exhibit 4.    Plaintiff's Responses to Defendant's Discovery Request

Exhibit 5.    Email from Plaintiff Dated 12/29/2011

Exhibit 6.    Deposition of Kevin Offel

Exhibit 7.    Deposition of Marian Columbus

Exhibit 8.    Deposition of Jennifer Roberts

**<u>SUPPORTING BRIEF</u>**

COME NOW the Defendants, and respectfully move for summary judgment on all claims asserted by the Plaintiff, Vicki Glasco. In support of this Motion, Defendants submit the following statement of facts, arguments and authorities.

## I.  INTRODUCTION

Plaintiff Glasco was hired at My Dentist as the HR Manager and was tasked with myriad job duties including updating the Employee Handbook, helping with staffing, advertising and recruiting, administration of benefits, a salary review for all employees, preparing job descriptions for every position, reviewing and updating the PTO policy, implementing an employee suggestion program, assessing and updating the termination process and, among others, training management regarding the behavioral-based interviewing techniques. Clearly Ms. Glasco had more than a few tasks to complete, yet she focused on screening candidates and failed to complete her other assignments to My Dentist management's satisfaction. Therefore, Glasco was subsequently terminated as HR Manager.

With no basis whatsoever, Plaintiff claims that her termination stems from her alleged opposition to illegal employment practices, however, she is unable to establish any protected opposition that she engaged in or to prove that any such opposition led to her termination.  Plaintiff has failed to show discriminatory motive

on the part of management, and has failed to show any causal connection between (nonexistent) "protected activity" and Plaintiff's termination. Defendants' reasons for her termination are legitimate, non-retaliatory and non-pretextual. Therefore, Defendants are entitled to judgment as a matter of law.

## II.  STATEMENT OF UNDISPUTED FACTS

1.      Plaintiff was employed by My Dentist from September 26, 2011 to January 5, 2012. (Exh. 1 – EEOC Charge of Discrimination, Pg. 002.)

2.      Prior to the beginning of her employment with My Dentist, Kevin Offel, the Chief Operating Officer, sent Plaintiff an email delineating the tasks she was to complete as HR Manager, including a review and update to the employee handbook. [Exh. 2 – Plaintiff's Deposition, Pg. 46, Lines 21-25.] In an email from Mr. Offel dated September 20, 2011, Mr. Offel iterated to Plaintiff that it was a priority that she standardize the hiring process. (Exh. 2, Pp. 112-113, Lines 16-25, Lines 1-14.)

3.      In her Complaint, Plaintiff alleges that, on her first day of employment, Dr. Steffen, Chief Executive Officer at that time, stated that there should not be "too many blacks or Mexicans at the [My Dentist] Casady location." (Exh. 2, Pg. 48, Lines 19-21, Exh. 3 – Plaintiff's Complaint, Line 20.) Plaintiff also alleges that Dr. Steffen said that "you wouldn't hire a black person in Beverly Hills and you wouldn't hire a white person in Compton." (Exh. 2, Pg. 48, Lines 22-24.) Plaintiff responded to these comments with "a blank look" and a question as to why he wouldn't hire the applicant in that scenario. (Exh. 2, Pg. 49, Lines 8-15.)

2

4.      Plaintiff agrees that My Dentist employed African-American employees in its administrative offices and as Regional Managers. [Exh. 2, Pg. 52, Lines 5-23.]

5.      On her second day of employment, Plaintiff alleges that Kevin Offel instructed her to put the word "upgrade" next to various employees' names on a staffing analysis report and that she was to recruit a replacement for the identified employee. (Exh. 2, Pg. 53, Lines 6-11.) Plaintiff agrees that the staffing analysis report did not distinguish the race of the employee to be terminated. [Exh. 2, Pg. 53, Lines 17-19.]

6.      Plaintiff questioned this practice because progressive discipline had not been provided as allowed in the Employee Handbook. (Exh. 2, Pg. 56, Lines 10-17). Plaintiff agrees that it is not illegal for My Dentist, or any other employer, to not provide progressive discipline or counseling prior to terminating an at-will employee. (Exh. 2, Pg. 56, Lines 21-25.) Plaintiff also agrees that progressive discipline prior to termination was not mandatory under the My Dentist handbook. [Exh. 2, Pg. 57, Lines 1-10.]

7.      Plaintiff alleges that Marian Columbus, My Dentist's Staffing Recruiter, told her to use a "blink test" when interviewing applicants for positions. (Exh. 2, Pg. 62, Lines 13-18; Exh. 3, Line 17.) Plaintiff alleges that Columbus told her that, just by blinking at the applicant, one should know if the applicant "fit the part." (Exh. 2, Pg. 63, Lines 8-10.) Plaintiff alleges that Ms. Columbus did not interview an applicant because she "did not look the part", but acknowledges that Ms. Columbus did not

comment on the applicant's age or race. [Exh. 2, Pgs. 64-65, Lines 21-22, Lines 6-11.] Plaintiff claims that she opposed this practice by telling Ms. Columbus to "look at the skills, knowledge and abilities a person has" and that hiring someone had "nothing to do with what a person look[ed] like." (Exh. 2, Pg. 136, Lines, 18-25.)

8.     Plaintiff claims that she had created an employment application designed to seek information from applicants that was more detailed than a resume. (Exh. 2, Pg. 66, Lines 23-24; Pg. 67, Lines 19-22). This employment application was in use until Plaintiff alleges that Columbus discontinued its use. (Exh. 2, Pg. 68, Lines 2-4).

9.     Plaintiff agrees that it is not an illegal employment practice for an employer to not use an employment application during the hiring process. (Exh. 2, Pg. 70, Lines 4-9).

10.     Plaintiff alleges that Offel and Columbus wrote comments, some derogatory in nature, on about 10 applicants' resumes or applications. (Exh. 2, Pg. 71, Lines 21-25, Pg. 72, Lines 1-3; Exh. 4, Plaintiff's Discovery Responses, Pg. 16; Exh. 3, Line 17.) She alleges that these phrases included "stupid, too much plastic surgery, no go, doesn't look the part, and fat." (Exh. 2, Pp. 78-79, Lines 23-25, 1-6). Plaintiff agrees that none of these comments were racially charged. Exh. 2, Pg. 78, Lines 16-22).

11.     Plaintiff alleges that in late November or early December 2011 she told Jennifer Roberts, a Staffing Specialist, and Columbus to stop this practice. (Exh. 2, Pg.

4

71, Lines 9-20; Pg. 79, Lines 7-9.) Plaintiff also alleges that the coding system used by Ms. Roberts and Ms. Columbus to screen candidates was illegal and possibly racially motivated. (Exh. 2, Pg. 76, Lines 16-24.) Plaintiff agrees that there is nothing wrong with ranking candidates by top tier candidate, second tier candidate, etc. (Exh. 2, Pg. 79, Line 25; Pg. 80, Lines 1-5.) Plaintiff agrees that the practice of writing derogatory comments on resumes or applications ceased after she addressed the issue with Ms. Roberts and Ms. Columbus. (Exh. 2, Pg. 80, Lines 13-16.)

12.    Plaintiff alleges that Columbus referred to applicants that were not "cute" enough or were "overweight" and "not fitting the part" as ones that would work in the billing office, rather than the front offices. (Exh. 2, Pg. 82, Lines 1-23). None of Ms. Columbus' discussions regarding employees in the billing office referred to race or ethnicity of the employee. (Exh. 2, Pg. 83, Lines 5-9; Pg. 85, Lines 10-13.)

13.    Plaintiff alleges that, on one occasion, she asked Dr. Steffen the status on My Dentist's EEO-1 Reports and that he told her "Plaintiff was not to spend [her] time on [those reports and] that HR crap." (Exh. 2, Pg. 86, Lines 11-14.) Plaintiff stated that she had not done any work on EEO-1 reports at My Dentist. (Exh. 2, Pg. 86, Lines 15-18.)

14.    On October 7, 2011, a dental hygienist working for My Dentist received a needle stick and there was discussion that the patient had HIV. The hygienist reported this incident to Plaintiff who told her to contact an urgent care office. (Exh. 2, Pg. 129, Lines 9-22.) On the following work day, Plaintiff alleges that Dr. Steffen

told her to not fill out an incident report or to care for that employee and stated that she shouldn't have gotten the employee medical attention. (Exh. 2, Pg. 130-131, Lines 22-25, 1-2.) Plaintiff alleges that her "opposition" to this employment practice was "do[ing] the right thing. . . under OSHA standards" and that she was told to not do any of that "HR crap." (Exh. 2, Pg. 131, Lines 14-18.)   This incident appears nowhere in the Plaintiff's Complaint.

15.    Plaintiff alleges that Dr. Steffen refused to allow Plaintiff to have an employee scan in the personnel files of terminated employees for record retention. (Exh. 2, Pg. 87, Lines 4-21; Exh. 4, Pg. 18-19.) Plaintiff agrees that it is not a legal requirement for an employer to have personnel files scanned in and saved electronically. (Exh. 2, Pg. 87, Lines 21-25.)

16.    Plaintiff alleges that a candidate for the Lewisville, Texas location was not hired because management believed there were "enough black people in Lewisville" and that she had really gross long fingernails. (Exh. 2, Pg. 89, lines 18-20; Exh. 4, Pg. 20.) Plaintiff is, and was at the time, unaware of the racial makeup of the Lewisville office. (Exh. 2, Pg. 90, Line 8.) Plaintiff was not present during the applicant's interview with Mr. Offel and is unable to testify regarding how the applicant did or appeared in her interview. (Exh. 2, Pg. 90, Lines 6-12). Plaintiff states that she opposed Offel's decision to not hire her by telling him that it was irrelevant that she was black and that she could cut her fingernails. (Exh. 2, Pg. 137, Lines 4-8.) Plaintiff stated that she opposed this practice also by offering to help

with the interviewing process in Texas and Dr. Steffen acted like he didn't hear her. (Exh. 2, Pg. 138, Lines 4-13.)

17.    Plaintiff stated that she is not aware of any candidate that applied for employment in the Lewisville, Texas office who was excluded from employment based on his or her race. (Exh. 2, Pg. 91, Lines 15-22).

18.    Plaintiff alleges that, at one time, she told Mr. Offel that My Dentist needed to display labor posters, but he refused to spend money on them. (Exh. 2, Pg. 139, Lines 3-7.)

19.    Plaintiff alleges that she was being pushed out of her role as HR manager by not being allowed to go to a job fair that primarily was for the recruitment of dentists. (Exh. 2, Pg. 93, Lines 14-19; Pg. 96, Lines 2-6; Exh. 4, Pg. 20-21.) Plaintiff agrees that she, as HR manager, had no responsibility recruiting dentists. (Exh. 2, Pg. 93, Lines 20-25, Pg. 94, Line 1).

20.    Plaintiff alleges that one of the reasons she was terminated was because she opposed an illegal employment practice of refusing to fill out an employee's workers' compensation forms. Following a fall, employee Diane Boykins approached Plaintiff and Plaintiff filled out the Form 2 and an incident report regarding the injury. (Exh. 2, Pg. 102, Lines 1-11) Plaintiff claims she was told by management to not fill out any forms for the injury, but she did so anyway. (Exh. 2, Pg. 103-104, Lines 23-25, 1-3, Exh. 3, Line 21.) Plaintiff did not get reprimanded or punished and isn't even sure that management was aware she filled out the

workers' compensation forms. (Exh. 2, Pg. 103, Lines 4-13.) Plaintiff believes that one of the reasons she was terminated was because she filed out the workers' compensation form for Ms. Boykins when Offel had told her not to. (Exh. 2, Pg. 133, Lines 9-17.) No one ever told Plaintiff she was terminated because she assisted Boykins with this claim and she has no facts or evidence to support this contention. (Exh. 2, Pg. 133, Lines 22-25.)

21.     Plaintiff alleges that she voiced concern to management that My Dentist's I-9 reports were not being completed or filled out properly. (Exh. 4, Pg. 18; Exh. 2, Pg. 88, Lines 1-18.) Plaintiff agrees that, when she began employment at My Dentist, she was working to ensure that the reports were filed out correctly. (Exh. 2, Pg. 88, Lines 19-24.)  This incident appears nowhere in the Complaint.

22.     Plaintiff states that, when she was hired, she was told her priorities included recruitment, retention of staff and benefits coordination. (Exh. 2, Pg. 42, Lines 20-25, Pg. 43, Lines 3-7.) Plaintiff states that she wanted to be more involved in the interviewing and hiring of candidates part of the process at My Dentist. (Exh. 2, Pg. 73, Lines 5-9.)

23.     Plaintiff alleges that Dr. Steffen told her that Patricia Coleman and Susan Porter, two African-American Regional Managers, were "hiring too many of their own kind" and not making good hiring decisions. (Exh. 2, Pg. 104, Lines 3-8.) Plaintiff asked Dr. Steffen if the other Regional Managers had to have second

interviews and he said no. These are the only discussions Plaintiff had with Dr. Steffen regarding these alleged remarks. (Exh. 2, Pg. 104, Lines 11-19.)

24.    In her Complaint, Plaintiff alleges that Ms. Columbus gave her illegal directives, such as hiring an applicant based on his or her appearance and to use the "blink test." (Exh. 3, ¶ 26; Exh. 2, Pg. 105, Lines 16-20.) Plaintiff agrees that Ms. Columbus never told her to hire someone based on the applicant's race. (Exh. 2, Pg. 105, Lines 21-24.) Plaintiff does allege that Columbus told her to not hire too many of one ethnicity at the Casady location. (Exh. 2, Pgs. 105-106, Lines 25, 1-3.)

25.    Plaintiff was sensing that Mr. Offel was frustrated with her ability to perform her job duties by early November, 2011. (Exh. 2, Pg. 124, Lines 9-16.)

26.    A few days prior to Plaintiff's termination, she alleges that she had been asked to complete a memo to the dental hygienists regarding clocking out before they completed their eight hours of work on any given day. (Exh. 3, ¶37; Exh. 2, Pg. 106, Lines 4-14.) Plaintiff alleges that the Hygiene Director, Jenny Head, told her that the hygienists were told to clock out after they worked eight hours, even if they continued to work longer and were not compensated for mandatory work meetings during off-hours. (Exh. 2, Pg. 107, Lines 1-13.) Plaintiff sent an email to Dr. Steffen, Mr. Offel and Jenae Pitts regarding the Fair Labor Standards Act requirement of paying all non-exempt employees for hours worked. (Exh. 5, Email from Glasco, December 29, 2011, Glasco emails 0314.)

27.     Plaintiff did not have any discussion with Dr. Steffen about this memo to the dental hygienists or her subsequent email. (Exh. 2, Pg. 108, Lines 1-3.) Plaintiff did not have any conversations with Mr. Offel regarding this issue. (Exh. 2, pp. 108-109, Lines 25, 1.) Plaintiff did not have any discussion with anyone at My Dentist regarding her concerns that wages weren't being paid correctly. (Exh. 2, Pg. 109, Lines 7-12.) Plaintiff alleges that she identified an illegal practice of not paying overtime wages but is unable to offer any facts or evidence that she opposed this practice or that it was a reason she was terminated, only able to say it seemed to be a "coincidence that [she] was never talked to about performance" and was then "fired two days later." (Exh. 2, Pgs. 134-135, Lines 24-25, 1-7.) No one told Plaintiff she was fired for raising an issue regarding overtime pay for dental hygienists. (Exh. 2, Pg. 135, Lines 8-11.)

28.     When Plaintiff returned to work after the New Year's holiday, Dr. Steffen told Plaintiff that it was not working out and her employment had been terminated. (Exh. 2, Pp. 109-110, Lines 24-25, Lines 1-5.) Dr. Steffen told her that he would give her a good reference letter for help in future employment. (Exh. 2, Pg. 111, Lines 2-5.)

29.     Dr. Steffen passed away in August of 2012. (Exh. 6 – Deposition of Kevin Offel, Pg. 28, Line 6.)

30.     Mr. Offel testified that Plaintiff struggled with the recruiting and staffing process and did not understand My Dentist's needs, nor was she able to

effectively support the needs of My Dentist's field offices. (Exh. 6, Pg. 203, Lines 10-16; see also Pgs. 182-183, Lines 22-25, 1-3.)

31.     Mr. Offel and Ms. Columbus both testified that Plaintiff struggled with her assigned task regarding benefits administration and additional My Dentist staff was required to assist her in order to get the task done in a timely manner. (Exh. 6, Pg. 203, Lines 17-23; Exh. 7 – Deposition of Marian Columbus, Pg. 80, Lines 15-21.)

32.     Mr. Offel testified that Plaintiff did not conduct a salary review, update any of the job descriptions, revise the PTO policy, or implement the employee suggestion program. (Exh. 6, Pg. 203-204, Lines 24-25, 1-10.) Mr. Offel testified that Plaintiff did not complete the review and update to the Employee Handbook. (Exh. 6, Pg. 149, Lines 10-22; Pg. 150, Lines 1-6.) All of these assignments were tasked to Ms. Glasco in the email she received from Mr. Offel at the beginning of her employment with My Dentist.

33.     Mr. Offel testified that Plaintiff did not complete tasks efficiently or in the time desired by My Dentist management. (Exh. 6, Pg. 206, Lines 3-6; see also Pgs. 182-183, Lines 22-25, 1-3.)

34.     Ms. Columbus testified that Dr. Steffen told her that Ms. Glasco was terminated because she was not doing the job she had been hired to do. (Exh. 7, Pg. 130, Lines 15-24.)

35.     Ms. Columbus testified that Ms. Glasco did not perform her staffing responsibilities well (Exh. 7, Pg. 131, Lines 1-3) and that several managers had

complained that Plaintiff was not getting her work done properly. (Exh. 7, Pg. 135, Lines 10-20.)

36.    Jennifer Roberts was employed as a staffing specialist and worked with Glasco.  [Exh. 8, p. 24]  Roberts observed that Dr. Steffen "was upset about things not getting done.  [Glasco] was focusing on different areas, and he was concerned that they, you know, weren't getting done." [Exh. 8, pp. 39 – 40]

37.    Roberts observed that unemployment claims were not being handled by Glasco.  [Exh. 8. P. 40]

38.    Roberts had specific discussions with Dr. Steffen regarding Dr. Steffen's expectations for Glasco's role as HR manager.  [Exh. 8, pp. 42 – 46]  Dr. Steffen emphasized management of staffing policies and procedures, managing the insurance open enrollment process, employee relations, updating the employee handbook. [Exh. 8. Pp. 45 – 46:  "that was what Dr. Steffen really wanted her to accomplish was the employee handbook."  See also pp. 58 – 58:  very important to Dr. Steffen.]  Kevin Offel also emphasized the importance of updating the employee handbook and staffing.  [Exh. 8, pp. 50 – 51]

39.    Steffen never expressed to Roberts that he wanted staff to be of a certain age or race. [Exh. 8, p. 48]  To the contrary, Dr. Steffen stated that he wanted staff to be "diversified."  [Id.]

40.    Roberts observed that Dr. Steffen criticized Glasco for spending time scanning in old employee files because he "wanted her focusing on helping with the

staffing." [Exh. 8, p. 65]    Roberts observed Dr. Steffen criticize Glasco to "stop focusing on staffing" and to "get to the – to the other—you know, the unemployment claims, the handbook. I need you to focus more on this." [Exh. 8, p. 100]

41.    Roberts observed that Dr. Steffen and Kevin Offel did not believe Glasco was effective in staffing because "it was not getting done fast enough." [Exh. 8, p. 105]

42.    Roberts explained that any use of a "coding system" of A, B, C., etc., was comments regarding the experience or appropriateness of responses provided by applicants. [Exh. 8, pp. 117 – 118]

43.    Dr. Steffen informed Roberts that he had terminated Glasco because she had not completed the employee handbook updates, and "there was too much piled up … ." [Exh. 8, p. 125 – 126]

### III.   ARGUMENT AND AUTHORITY

**Proposition I:**      **Plaintiff Has Failed to Establish a Prima Facie Case of Retaliation.**

In the absence of direct evidence of retaliatory intent, Plaintiff must first establish a prima facie case that "(1) she engaged in protected opposition to Title VII discrimination; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004); *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1227 (10th Cir. 2008); *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). If this prima facie case is established,

the employer must offer a legitimate, non-retaliatory reason for the adverse employment action. *Argo v. Blue Cross & Blue Shield of Kan., Inc.,* 452 F.3d at 1202. The burden then shifts back to Plaintiff to demonstrate that the employer's reasons are merely a pretext for retaliation. *Id.* at 1203.

### Plaintiff has failed to establish a prima facie case of retaliation for opposition of employment practices that are in violation of Title VII.

Ms. Glasco has utterly failed to show that she engaged in any sort of protected activity that led to her termination and rests her retaliation case entirely on alleged dramatic conversations with My Dentist management regarding entirely legal employment practices. Plaintiff testified in her deposition that she exposed several "illegal employment practices," of the hiring or not hiring of employees based on their race and appearance. It is true that several members of My Dentist management discussed their plan to hire a diverse work force with the Plaintiff and it is clear that she has exaggerated this goal for diversity into an illegal and discriminatory practice. Plaintiff testified in her deposition that, after Dr. Steffen made the comment that he would not hire a black person in Beverly Hills or a white person in Compton, she "looked at him with a blank look" and asked him "why not?" (Exh. 2, Pg. 49, Lines 8-15.)

Case law has firmly established that, in order to support a Title VII claim of retaliation, an employee must communicate that he or she has a belief that the employer is engaging in an illegal practice. 42 U.S.C. § 2000e-3; see also *Zokari v. Gates,* 561 F.3d 1076, 1081 (10th Cir. 2009) (a Plaintiff needs to provide supervisors

enough information to put the employer on notice that he is opposing a violation of Title VII); *Petersen v. Utah Dept. of Corr.,* 301 F.3d 1182, 1188 (10th Cir. 2002) (holding that, for an adverse action to be *because* of the protected opposition, the employer must know about the protected opposition). "'Oppose' as used in 42 U.S.C. § 2000e-3 goes beyond 'active, consistent' behavior in ordinary discourse." *Crawford v. Metropolitan Gov't. of Nashville and Davidson Cnty., Tenn.,* 555 U.S. 271, 277 (2009). Answering an employer's question regarding discrimination is enough to establish "opposition" under federal law just as provoking the discussion. *Id.* However, "a general complaint of unfair treatment is insufficient to establish protected activity under Title VII. *Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.,* 450 F.3d 130, 135 (3d Cir. 2006) citing *Barber v. CSX Distribution Svcs.,* 68 F.3d 694, 701-02 (3d Cir. 1995).

Plaintiff claims that after Dr. Steffen allegedly made these comments regarding hiring staff, she responded "with a blank look." It can hardly be said that a blank look provided Dr. Steffen and My Dentist with the required knowledge that Plaintiff was "opposing an illegal employment practice" as mandated by both statutory and case law. A blank look clearly does not fit under the definition of "oppose" as laid out by the United States Supreme Court in *Crawford* (supra) as Plaintiff did not engage in any behavior, much less active behavior, to express any opposition to Dr. Steffen's alleged remarks.

Plaintiff also points to the African-American applicant who was not hired in the Lewisville office as evidence of racial discrimination in the hiring process and that Mr. Offel allegedly commented that "there were too many blacks" already in the Lewisville office. Plaintiff did not oppose this practice in the way mandated by 42 U.S.C. §2000e-3. In response to Mr. Offel, Plaintiff merely told him that "race was irrelevant". Plaintiff agrees that she was not present during Mr. Offel's interview of the applicant and that she does not know of any manager applicants that were excluded from the Lewisville office based on their race. (Exh. 2, Pg. 91, Lines 15-22.) Plaintiff, by not actively opposing this hiring decision in a way that put My Dentist on notice that she was engaging in a protected activity, has failed to establish her prima facie case for retaliation regarding alleged violations of Title VII.

Even if this Court were to find Plaintiff engaged in a protected activity regarding My Dentist management's alleged racial remarks, it is clear that, Plaintiff has failed to establish a causal connection between any such opposition and her subsequent termination. Plaintiff testified that this alleged conversation with Dr. Steffen in which he made racial remarks occurred on her second day of the job at My Dentist, which would have been at the end of September 2011. Plaintiff was not terminated from My Dentist until January 5, 2012, some fourteen (14) weeks later. Retaliatory motive can sometimes be inferred when an adverse action follows protected activity. *Piercy v. Maketa,* 480 F.3d 1192, 1198 (10th Cir. 2007). Tenth Circuit case law is firm in its rulings that the termination must be very close in time

16

to the protected activity in order for this inference to be applied. *Id.*; see also *Hysten v. Burlington Northern & Santa Fe Ry.,* 296 F.3d 1177, 1183-84 (10th Cir. 2002) (holding that three months' duration between the protected activity and the termination was too far attenuated to allow for the presumption). Plaintiff's "blank stare" in response to Dr. Steffen's comments occurred more than three months prior to her termination. Because there is no inference based on temporal proximity, Plaintiff must present additional evidence to show a retaliatory motive. She has not done so. Plaintiff agrees that no one at My Dentist ever told her she was terminated because she gave Dr. Steffen a blank stare regarding his remarks or that she wanted the African-American applicant hired. Without any evidence that Plaintiff was terminated for any sort of opposition to an illegal employment practice, Plaintiff has failed to establish her prima facie case of retaliation.

Plaintiff, in her Complaint and throughout her deposition, referred to a "blink test" implemented by Marian Columbus. This "blink test," Plaintiff claims, instructed staff to hire only attractive and "cute" applicants. Plaintiff also claims that Ms. Columbus would assign overweight or less attractive employees to work in the administrative offices, rather than out in the clinics. Plaintiff claims to have discussed with Ms. Columbus on numerous occasions that hiring an applicant based on her appearance rather than on her skills and inabilities was illegal. (Exh. 2, Pg. 139, Lines 8-18.) However, "Title VII protects only certain enumerated categories . . . [and] [n]either weight nor attractiveness is a protected category." *Smith v.*

17

*Progressive Stamping and Plating, Inc.*, No. 05-1262, 2006 WL 1895468, at *4 (W.D. La. July 7, 2006) (citing *Jones v. City of Mount Vernon*, 114 F. Supp. 2d 274 (S.D.N.Y. 2000). In order for hiring based on attractiveness or appearance to be illegal, it must be tied to a protected class, such as gender. Plaintiff contention that she opposed a practice of hiring "attractive" applicants fails to show that Plaintiff opposed any hiring practice made illegal under Title VII.  Plaintiff has failed to establish her prima facie case of retaliation under Title VII.

> **Proposition II:     Plaintiff's Retaliation Claims Under "Public Policy" Fail.**

In her Complaint, Plaintiff alleges that, during her brief employment with Defendants, she reported concerns about the compensation practices of the Defendants. In Count II of her Complaint, she alleges that she was discharged in retaliation for opposing an alleged failure to pay proper wages as a violation of "clearly established public policy" in Oklahoma. (Exh. 3, ¶¶ 47-48) Count III of her Complaint alleges that her termination was also due to assisting an employee with the completion of a workers' compensation claim. Plaintiff asserts both a statutory retaliatory discharge claim under 85 O.S. § 341 (formerly 85 O.S. § 5), and a claim that her discharge violates Oklahoma's public policy "reflected in the Oklahoma's Worker's Compensation Code." (Exh. 3, ¶ 52.).

Thus, Plaintiff has asserted two state law "public policy" wrongful termination claims against Defendants: (a) violation of alleged public policy prohibiting termination of an employee for opposition to "failure to pay wages" and

(b) violation of alleged public policy prohibiting termination of an employee for assisting another with the filing of a workers' compensation claim. However, regarding both of these claims, Plaintiff has failed to establish evidence that she (1) engaged in a protected activity; and (2) that she was terminated for doing so. Additionally, such claims have been abolished by statute.

As this Court determined in its Memorandum Opinion, Plaintiff's claims under the public policy *Burk Tort* properly state a claim for relief, allowing her to survive a Motion to Dismiss on this ground. [Doc. 13.] However, Plaintiff has failed to establish any sort of causal connection showing that she was terminated for the complaints she claims to have made regarding Defendants' alleged violation of the requirement to pay overtime wages or her assistance in filling out another employee's workers' compensation forms. As discussed *supra*, in order to establish a prima facie case of retaliation, Plaintiff must show that "(1) she engaged in protected opposition to Title VII discrimination; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004); *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1227 (10th Cir. 2008); *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). As will be shown, because Plaintiff's claims fail under federal law, her state law public policy tort claims likewise fail.

### **Plaintiff has failed to establish a prima facie case for retaliation for opposing illegal employment practices under the public policy requiring an employer to pay wages.**

Plaintiff alleges that in late December, 2011, she heard from another former My Dentist employee that management had instructed dental hygienists to clock out even if they worked over eight hours and that they were not permitted to receive overtime pay. (Exh. 2, Pg. 107, Lines 1-13.) On December 28, 2011, Plaintiff was asked to prepare a memo about the policy requiring hygienists to clock in and out. (Exh. 2, Pg. 107, Lines 20-25.) Plaintiff did not raise any issue with this directive. Rather, she prepared the memo as asked. (Exh. 2, Pg. 108, Lines 1-22). Plaintiff then sent an email to Dr. Steffen, Mr. Offel, and Jenae Pitts letting them know that it is a violation of the Fair Labor Standards Act to not compensate all non-exempt employees for hours worked and inquired if that was the practice My Dentist was engaging in. (Exh. 5.) In this email, Plaintiff failed to convey to My Dentist that she was engaging in protected activity because this email only gave My Dentist "notice of the possibility" that there was an illegal practice occurring, not that she was "opposing" any such practice. *See Eke v. CaridianBCT, Inc.,* 490 Fed.Appx. 156, 161 (10th Cir. 2012) citing *Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187, 1203 (10th Cir. 2008). Plaintiff testified did not have any discussion or provide notice to Dr. Steffen or any of My Dentist's management that she had concerns that wages weren't being paid correctly and, therefore, did not "oppose" this practice as required by 42 U.S.C. § 2000e-3.

Even if the email regarding the possibility of an illegal employment practice is considered an "opposition" to the practice, Plaintiff's only proof that her email

regarding overtime pay caused her to be terminated is her testimony that it seemed to be a "coincidence that [she] was never talked to about performance" and was then "fired two days later." No one at My Dentist ever told Plaintiff she was fired for raising an issue regarding overtime pay for dental hygienists. By failing to establish that she engaged in a protected activity or that her alleged opposition directly led to her termination, Plaintiff has failed to establish her prima facie case for retaliatory discharge. Defendants are entitled to judgment as a matter of law.

Plaintiff's failure to establish a valid retaliation claim under Title VII is likewise fatal to Plaintiff's "public policy" claim. *McCully v. Am. Airlines, Inc.*, 695 F. Supp. 2d 1225, 1246-47 (N.D. Okla. 2010) aff'd, 406 F. App'x 260 (10th Cir. 2010): "The Tenth Circuit has repeatedly recognized that a plaintiff's failure to establish federal discrimination claims is equally dispositive of *Burk* claims. E.g., *Brown v. Bd. of Regents*, 353 Fed.Appx. 169, 172-73 (10th Cir. 2009) (unpublished); *Ruleford v. Tulsa World Publ'g Co.*, 266 Fed.Appx. 778, 784 (10th Cir.2008) (unpublished); *Smith v. Okla. ex rel. Tulsa County Dist. Attorney*, 245 Fed.Appx. 807, 818 (10th Cir.2007) (unpublished); *Malone v. MAPCO, Inc.*, No. 91-5073, 1992 WL 26788, at *1 (10th Cir. Feb. 11, 1992) (unpublished)."

Additionally, the *Burk* tort has been abolished by statute.  See 25 O.S.  §§ 1101(A), 1350(A). As amended, the Oklahoma Anti-Discrimination Act provides exclusive remedies for actions asserting employment discrimination, providing "[a] cause of action for employment-based discrimination is hereby created and any

common law remedies are hereby abolished." 25 O. S. § 1350(A). The remedies abolished include *Burk* tort claims. *Mazzanti v. City of Owasso*, 2012 U.S. Dist. LEXIS 89457, 2012 WL 2505504, at *1 (N.D. Okla. June 28, 2012) (unpublished opinion); *Jenkins v. Legend Senior Living, L*LC, 2012 U.S. Dist. LEXIS 70114, 2012 WL 1865394, at *7 (N.D. Okla. May 21, 2012) (unpublished opinion); *Peters v. Black Tie Value Parking Serv., Inc*., CIV-12-809-D, 2013 WL 149773 (W.D. Okla. Jan. 14, 2013).  Jones' claims accrued <u>after</u> the amendments to the OADA, November 1, 2011.  *Peters v. Black Tie*, supra:  claim accrues <u>after</u> the filing of a Charge of Discrimination.

### **Plaintiff has failed to establish a prima facie case for retaliation for assisting another in the filing of a workers' compensation claim.**

Plaintiff claims that another reason she was terminated was for helping a My Dentist employee fill out workers' compensation paperwork after she sustained a fall while at My Dentist. Sometime in mid-November 2011, Diana Boykins reported to Plaintiff that she had fallen down and was injured. Plaintiff has testified that Mr. Offel told her not to fill out any of the workers' compensation paperwork for Ms. Boykins. (Exh. 2, Pg. 102-103, Lines 23-25, 1-3.) Plaintiff, however, did complete the Form 2 and the incident report for Ms. Boykins' injury. (Exh. 2, Pg. 102, Lines 4-11.) Plaintiff testified in her deposition that she was not punished by My Dentist management for the completion of these forms and believes that Mr. Offel may not have even known she did so. (Exh. 2, Pg. 103, Lines 4-12.)

In a failed attempt to establish her prima facie case for retaliation based on assisting Ms. Boykins with workers' compensation claims, Plaintiff claims that Mr.

Offel and My Dentist management instructed her to not complete the forms and that this was an "illegal employment practice" based on Oklahoma public policy. Plaintiff also alleges that her "opposition" to this practice was that she filled out the forms and submitted the claim despite the instruction not to. However, Plaintiff has testified that she doesn't even believe Mr. Offel was aware of her "opposition" to his instructions. Approximately one-and-a-half months later, Plaintiff was terminated.

As discussed *supra,* retaliation claims must be supported by evidence that the employer was on notice of an employee's opposition to an illegal practice. See *Zokari v. Gates,* 561 F.3d 1076, 1081 (10th Cir. 2009) (a Plaintiff needs to provide supervisors enough information to put the employer on notice that he is opposing a violation of Title VII); *Petersen v. Utah Dept. of Corr.,* 301 F.3d 1182, 1188 (10th Cir. 2002) (holding that, for an adverse action to be *because* of the protected opposition, the employer must know about the protected opposition). Mr. Offel testified that he is aware that the workers' compensation claims for Ms. Boykins were processed but that he is unaware who completed those forms. (Exh. 6, Pg. 163, Lines 24-25.) Plaintiff has not established that Defendants even *knew* that she completed the workers' compensation forms, much less that this somehow caused her termination. Plaintiff has failed to establish any causal connection between her protected activity in filling out the workers' compensation forms and her termination over a month later; therefore, Defendants are entitled to judgment as a matter of law on this claim.

**Proposition III:   Defendants Have Stated Legitimate Nondiscriminatory Reasons for any Adverse Employment Action.**

Under the *McDonnell Douglas* framework, if Glasco establishes a prima facie case of retaliation (and My Dentist denies that she has done so regarding any of her claims), the employer must then articulate a legitimate non-discriminatory reason for the adverse employment action taken against the employee. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973); *Kendrick v. Penske Transp. Services, Inc.,* 220 F.3d 1220, 1226 (10th Cir. 2000). However, this is merely a burden of production, not of persuasion. *McDonnell Douglas*, 411 U.S. at 802; *Upshaw v. Ford Motor Company*, 576 F.3d 576 (6th Cir. 2009)("This is merely a burden of production, not of persuasion, and it does not involve a credibility assessment"); *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000); and *Bd. of Trustees of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 n.2 (1978) (noting that "the employer's burden is satisfied if he simply 'explains what he has done' or 'produces evidence of legitimate nondiscriminatory reasons'").  This burden is "exceedingly light." E.E.O.C. v. C.R. England, Inc., 644 F.3d 1028, 1043 (10th Cir. 2011).

Mr. Offel, current CEO of My Dentist, has testified that, during her approximately four-month employment with Defendants, Plaintiff was unable to complete her assigned tasks efficiently and to the satisfaction of My Dentist management, including Dr. Steffen. Plaintiff did not complete her review and update of the Employee Handbook, the requested revisions to the PTO policy, an update to the current job descriptions, a salary review the timely administration of benefits,

nor did she implement the requested employee suggestion program. It is clear that Plaintiff was unable to keep up with the fast pace of Defendants' rapidly growing business. The evidence shows that Plaintiff was terminated due to her poor job performance and her inability to complete tasks and not for a retaliatory motive.

**Proposition IV:      Plaintiff Has Failed to Show "Pretext."**

As Defendants have stated legitimate and nonretaliatory reasons for her termination, Plaintiff must establish that these reasons are pretext. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620 (10th Cir. 2012); *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011).   Pretext may be shown by providing direct evidence that the proffered rationale is false, or that the plaintiff was treated differently from similarly-situated employees. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007); *Crowe v. ADT Sec. Services, Inc.*, 649 F.3d 1189, 1196-97 (10th Cir. 2011).

Simply disbelieving the employer is insufficient. *Miller v. Eby Realty Group, LLC,* 396 F.3d 1105, 1111 (10th Cir. 2005). A challenge of pretext requires a court to look at the facts as they appear to the person making the decision to terminate, not the aggrieved employee. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000); *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1322 n. 12 (10th Cir.1992) ("[A] mistaken belief can be a legitimate reason for an employment decision and is not necessarily pretextual.") See also *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007): "Neither Title VII nor the ADEA prohibits an employer from

making hasty decisions that appear harsh; what they forbid are decisions made with discriminatory animus." (citing *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1321 (10th Cir.1992). "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, **but whether it honestly believed those reasons and acted in good faith upon those beliefs**." *Rivera v. City & County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004)(emphasis added). The "honest belief" of the employer is the critical issue: "The reason for this rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006).

Even if Plaintiff has demonstrated a prima facie case for retaliation, temporal proximity of the date of her email regarding the failure to pay overtime and her termination is not enough to show pretext as My Dentist has offered legitimate, non-retaliatory reasons for the action. In the absence of other evidence showing pretext, temporal proximity alone is insufficient to show pretext. In *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1240-41 (10th Cir. 2004), the Tenth Circuit specifically rejected temporal proximity as alone sufficient to establish pretext: "Allowing 'very close' temporal proximity to operate as a proxy for this evidentiary requirement would not further the substantive purposes of our inquiry at this stage." "The temporal proximity between an employee's protected conduct and an adverse employment action 'is not sufficient by itself to raise an issue of fact' regarding pretext.'" *Tran v.*

*Trustees of State Colleges in Colorado*, 355 F.3d 1263, 1270 (10th Cir. 2004), quoting

*Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000); *Anderson v. Coors*

*Brewing Co.*, 181 F.3d 1171, 1180 (10th Cir. 1999).

There is no evidence that My Dentist's reasons for terminating Glasco are

pretextual.  Glasco was unable to perform the duties tasked to her at the beginning

of her employment. She was unable to keep up with the fast pace of the Defendants'

rapidly growing business. The fact that she was terminated days after she sent an

email voicing concerns about a potentially illegal employment practice is not

enough to establish pretext.

WHEREFORE, in consideration of the above arguments and authorities, the

Defendants respectfully pray for summary judgment on all claims asserted by the

Plaintiff, Vicki Glasco.  The Defendants further pray for their costs and attorneys fees

incurred in the defense of this action.

Respectfully submitted,

  s/ Randall J. Wood
Randall J. Wood, OBA # 10531
Jessica L. Speegle, OBA # 31236
PIERCE COUCH HENDRICKSON
   BAYSINGER & GREEN, L.L.P.
1109 N. Francis; P. O. Box 26350
Oklahoma City, OK  73126-0350
Telephone:  (405) 235-1611
Fax:  (405) 235-0085
*Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 7th day of January, 2014, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Sarah J. Timberlake
April B. Eberle
ABOWITZ, TIMBERLAKE, DAHNKE
 & GISINGER, P.C.
105 N. Hudson, Tenth Floor
P.O. Box 1937
Oklahoma City, Oklahoma 73101-1937
*Attorneys for Plaintiff*

_ s/ Randall J. Wood_____
Randall J. Wood