## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Vicki L. Glasco, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-13-130-C |
| | ) | |
| Advanced Dental Implant & Denture Center, | ) | |
| LLC, dba My Dentist; Advanced Dental | ) | |
| Implant and Denture, Inc.; and | ) | |
| My Dentist Holdings, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## **PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS AND BRIEF IN SUPPORT**

Sarah J. Timberlake, OBA #7532
April B. Eberle, OBA # 18327
ABOWITZ, TIMBERLAKE & DAHNKE, P.C.
105 North Hudson, Tenth Floor
Post Office Box 1937
Oklahoma City, Oklahoma 73101-1937
Telephone:  (405) 236-4645
Facsimile:  (405) 239-2843
Email:      sjt@abowitzlaw.com
            abe@abowitzlaw.com
            mainmail@abowitzlaw.com
*Attorneys for Plaintiff, Vicki L. Glasco*

January 28, 2014

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS . . . . . . . 2

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I.     Applicable standards for retaliatory discharge . . . . . . . . . . . . . . . . . . 9

    II.    Plaintiff has established a prima facie case of retaliatory
           discharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    III.   Plaintiff has established pretext . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    IV.   Plaintiff concedes that Burk torts have been abolished by
           statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

Annett v. Univ. of Kan.,
   371 F.3d 1233 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Barone v. United Airlines, Inc.,
   355 Fed. Appx. 169 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Champion v. Spencer Gifts, L.L.C.,
   2009 U.S. Dist. LEXIS 88704, 2009 WL 3131461 (D. N.J.) . . . . . . . . . . . . . . . . . . . 17

Dominguez-Cruz v. Suttle Caribe, Inc.,
   202 F.3d 424 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

EEOC v. PVNF, L.L.C.,
   487 F.3d 790 (10th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fye v. Oklahoma Corp. Comm'n,
   516 F.3d 1217 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Hare v. Denver Merch, Mart, Inc.,
   255 Fed. Appx. 298 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Hertz v. Luzenac Am., Inc.,
   370 F.3d 1014 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Johnson v. Weld Co.,
   2008 U.S. LEXIS 72620, 2008 WL 4402247 (D. Colo.) . . . . . . . . . . . . . . . . . . . . . . 7

Kobrin v. Univ. of Minn.,
   34 F.3d 698 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lobato v. N.M. Env't Dept.,
   733 F.3d 1283 (10th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Meiners v. Univ. of Kan.,
   359 F.3d 1222 (10th Cir 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Morgan v. Hilti, Inc.,
   108 F.3d 1319 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

Olson v. General Elect. Astrospace,
    101 F.3d 947 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Pastran v. K-Mart Corp.,
    210 F.3d 1201 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Paup v. Gear Prods.,
    327 Fed. Appx. 100 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Peters v. Black Tie Value Parking Serv.,
    2013 U.S. Dist. LEXIS 5203, 2013 WL 149773 (W.D. Okla.) . . . . . . . . . . . . . . . 18

Thurman v. Yellow Freight Sys., Inc.,
    90 F.3d 1160 (6th Cir. 1996);
    opinion amended by 97 F.3d 833 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Evid. 801(d)(2)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

25 O.S. §§ 1101(a), 1350(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS AND BRIEF IN SUPPORT

COMES NOW Plaintiff, Vicki L. Glasco, and respectfully submits her Response to Motion for Summary Judgment of Defendants and Brief in Support. In support of her Response, Plaintiff submits that the Motion for Summary Judgment of Defendants should be overruled.

### INTRODUCTION

Plaintiff, Vicki L. Glasco, was hired by Defendant My Dentist to be its Human Resources Manager. She realized something was amiss the first day she began working for My Dentist. On her first day, she was called to the office of Dr. Rodney Steffen ("Dr. Steffen"), president and chief executive officer at My Dentist. Kevin Offel ("Offel"), chief operating officer, was also present. Steffen made comments that he did not want too many minorities in the Casady location since it catered to a wealthier clientele. Plaintiff had a puzzled look on her face. Dr. Steffen then explained that you would not expect to hire a black person in Beverly Hills or a white person in Compton. Offel agreed with Dr. Steffen. In turn, Plaintiff responded that the person's race was irrelevant to her and that she would only consider the person's qualifications.

Although Plaintiff had originally been given a long list of tasks her job was to entail, she was immediately directed to focus on staffing. Before too long, she was frozen out of even performing that task.

There were numerous occasions in which Plaintiff attempted to correct illegal hiring practices of My Dentist and made the management aware of her opposition to

those practices.  In October 2011, Dr. Steffen complained that two African-American regional managers were hiring "too many of their own kind" and directed Marian Columbus, doctor recruiter, to conduct second interviews of candidates that those regional managers wished to hire.  Plaintiff pointed out that this requirement was not placed on the white, male regional manager.  Dr. Steffen agreed, and she was fired shortly later.

Foremost was an incident in late December 2011 involving the interviewing of Lenora Tatum, an African-American woman, for manager at the Lewisville, Texas location of My Dentist.  Plaintiff had conducted the screening of Ms. Tatum and concluded that she was very qualified.  Finally, Offel conducted a Skype interview with Ms. Tatum.  When she did not readily hear how the interview with Ms. Tatum went, she inquired of Offel.  Offel told her there were already enough blacks at the Lewisville location and that Ms. Tatum had long, gross fingernails.  Plaintiff responded that race was irrelevant and that fingernails could be cut.  Offel simply walked away.

Still outraged, Plaintiff immediately went to Dr. Steffen taking staffing specialist Jennifer Roberts with her.  Dr. Steffen responded that she already had her answer.  He also became upset and said there were too many ugly blacks in Lewisville.  Attempting to redirect the deplorable hiring practices, Plaintiff offered to travel to Texas to conduct interviews herself.  She was never permitted to do so.  Plaintiff was fired in early January 2012.

## RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

1.    Undisputed.

2

2.      Undisputed.

3.      Undisputed in part and disputed in part. Plaintiff does not dispute that Dr.
        Steffen made the comments listed, but does dispute that her only response
        was a "blank stare." She also responded by asking, "Why wouldn't I? I
        would hire the best qualified." Plaintiff then asked how many EEOC
        complaints there were against My Dentist. Offel stated that there were two
        complaints at that time. (See, *Plaintiff Vicki Glasco's Responses to
        Defendant's First Set of Interrogatories*, pg. 27-28, attached hereto as "Ex.
        1"; *Affidavit of Vicki Lynn Glasco*, ¶¶ 8-9, attached hereto as "Ex. 3.")

4.      Undisputed.

5.      Undisputed.

6.      Undisputed.

7.      Undisputed.

8.      Undisputed.

9.      Undisputed.

10.     Undisputed.

11.     Undisputed.

12.     Undisputed.

13.     Undisputed.

14.     Undisputed.

15.     Undisputed.

16.   Disputed.   Offel told her that there were too many blacks already at Lewisville and that Ms. Tatum had long, gross fingernails.   Plaintiff maintains that she opposed this illegal employment practice by also attempting to correct the practice by offering to conduct interviews in Texas herself.   She was never permitted to do so.   Plaintiff further states that she further opposed this practice by taking staffing specialist Jennifer Roberts with her to Dr. Steffen's office.   Dr. Steffen told her that she already had her answer and that there were too many ugly blacks at the Lewisville location.   It was at this point that Plaintiff offered to conduct interviews in Texas herself.   Her offer was ignored.   (See, *Plaintiff Vicki Glasco's Responses to Defendant's First Set of Interrogatories*, pg. 19-20, attached hereto as "Ex. 1"; *Deposition of Vicki Lynn Glasco*, pg. 90, ln. 8-20, attached hereto as "Ex. 2"; *Affidavit of Vicki Lynn Glasco*, ¶¶ 10-12, attached hereto as "Ex. 3.")

17.   Undisputed.

18.   Undisputed.

19.   Undisputed.

20.   Disputed.   Plaintiff does not dispute that she alleges one reason she was terminated was for helping Dianna Boykins ("Boykins") fill out a workers' compensation claim even after being told by Offel, with expletives, not to do so.   Plaintiff disputes that she was not reprimanded.   Offel used expletives with her in directing her not to assist Boykins.   This was a form

4

of reprimand for even suggesting that Boykins had the right to make a claim. (See, *Plaintiff Vicki Glasco's Responses to Defendant's First Set of Interrogatories*, pg. 13, attached hereto as "Ex. 1".)  Plaintiff admits that she believes one reason she was terminated was for helping Boykins file her workers' compensation claim. Plaintiff admits that no one told her that she was fired for assisting Boykins in making a claim but disputes that she has no facts or evidence to support this contention.  In support of her contention that she was fired for assisting Boykins, Plaintiff would show that she was terminated just a few weeks later.

21.   Undisputed.

22.   Undisputed.

23.   Undisputed.

24.   Undisputed.

25.   Undisputed.

26.   Undisputed.

27.   Undisputed in part and disputed in part.  Plaintiff admits that she had no discussion with Dr. Steffen or Offel about her opposition to the unlawful compensation practices of My Dentist, but Plaintiff contends that she plainly expressed her concerns to Dr. Steffen and Offel that the practices were unlawful. This lack of communication by Dr. Steffen and Offel was out of the ordinary.  Normally, she, Offel, and Dr. Steffen had constant communication.  In this instance, they simply chose not to respond other

5

than by firing her. (See, *Deposition of Vicki Lynn Glasco*, pg. 134, ln. 1-25, pg. 135, ln. 1-7, attached hereto as "Ex. 2"; *Affidavit of Vicki Lynn Glasco*, ¶ 18, attached hereto as "Ex. 3.")

28.   Undisputed.

29.   Undisputed.

30.   Undisputed in part and disputed in part.   While Plaintiff admits Offel so testified, Plaintiff disputes she was ineffective in recruiting and staffing. Plaintiff was effectively frozen out of those roles given that Marian Columbus, doctor recruiter, and Jennifer Roberts, staffing specialist, conducted most interviews even though Plaintiff offered to do so. (See, *Affidavit of Vicki Lynn Glasco*, ¶¶ 4, 12, 22, attached hereto as "Ex. 3.")

31.   Disputed.  Plaintiff did not struggle with benefit administration.  Rather, she was directed to focus on staffing and not to worry about benefits. (See, *Affidavit of Vicki Lynn Glasco*, ¶ 24, attached hereto as "Ex. 3.")

32.   Disputed.  Plaintiff did not fail to achieve these tasks through any fault of her own.   She was following Dr. Steffen and Offel's instructions to concentrate on staffing.   Moreover, Plaintiff did complete the Employee Handbook in the time frame set by Dr. Steffen. (See, *Affidavit of Vicki Lynn Glasco*, ¶¶ 5, 19-20, attached hereto as "Ex. 3.")

33.   Disputed.  Plaintiff had taken tasks from her and was told to focus on staffing.  She completed the Employee Handbook in the time frame set by

6

Dr. Steffen.  (See, *Affidavit of Vicki Lynn Glasco*, ¶ 5, 19-20, 22-24, attached hereto as "Ex. 3.")

34.   Undisputed in part and disputed in part.  Plaintiff admits that Marian Columbus so testified.  However, there were numerous reasons given for Plaintiff's termination.  Dr. Steffen initially told Plaintiff that the dynamics just were not working right.  (See, *Affidavit of Vicki Lynn Glasco*, ¶ 25, attached hereto as "Ex. 3.")  The letter of reference that he gave her said that her position had been eliminated.  (See, *Affidavit of Vicki Lynn Glasco*, *Letter of Reference*, Ex. A, attached hereto as "Ex. 3.")  Finally, Patricia Snyder was told that Plaintiff was terminated because she was blamed for too many blacks at the Lewisville, Texas location.  (See, *Affidavit of Patricia Snyder*, ¶ 5, attached hereto as "Ex. 5.")[1]

35.   Disputed.  Plaintiff was systematically removed from being an effective HR manager.  Dr. Steffen never expressed dissatisfaction with her job performance.  (See, *Affidavit of Vicki Lynn Glasco*, ¶¶ 19-20, 22-24, attached hereto as "Ex. 3.")

---

[1]   Defendants may assert that the affidavit of Patricia Snyder is an instance of hearsay.  However, Plaintiff submits that it is as an admission by party opponent pursuant to Rule 801(d)(2)(D) of the Federal Rules of Evidence and is not hearsay. See Fed. R. Evid. 801(d)(2)(D).

The Court of Appeals for the Tenth Circuit has noted that, "For a statement to qualify as an admission of a party opponent, the speaker must be involved in the decision-making process affecting the relevant employment action." Johnson v. Weld Co., 2008 U.S. LEXIS 72620, 2008 WL 4402247 (D. Colo.).

Patrick Corbett was the chief financial officer and Plaintiff's supervisor for benefits.  Moreover, he was consulted by Dr. Steffen in the decision to terminate Plaintiff so there can be little doubt that he was involved in the decision-making process to terminate Plaintiff.  (See, *Affidavit of Vicki Lynn Glasco*, ¶ 24, attached hereto as "Ex. 3"; *E-mail to Patrick Corbett from Dr. Steffen*, attached hereto as "Ex. 6.")

36. Disputed. Dr. Steffen never expressed dissatisfaction to Plaintiff with her job performance. (See, *Affidavit of Vicki Lynn Glasco*, ¶ 19, attached hereto as "Ex. 3.")

37. Disputed. Plaintiff did not let unemployment claims "pile up." Plaintiff routinely attended to unemployment claims as they arose. (See, *Affidavit of Vicki Lynn Glasco*, ¶ 21, attached hereto as "Ex. 3.")

38. Plaintiff is without knowledge of what Jennifer Roberts discussed with Dr, Steffen. Plaintiff disputes that she did not accomplish the goal of finishing the Employee Handbook. (See, *Affidavit of Vicki Lynn Glasco*, ¶ 5, attached hereto as "Ex. 3.")

39. Disputed. Jennifer Roberts was with Plaintiff in Dr. Steffen's office when he complained that there were "too many blacks" in the Lewisville, Texas location of My Denitst. (See, *Plaintiff Vicki Glasco's Responses to Defendant's First Set of Interrogatories*, pg. 20, attached hereto as "Ex. 1"; *Affidavit of Vicki Lynn Glasco*, ¶ 10-12, attached hereto as "Ex. 3.")

40. Undisputed.

41. Disputed. Neither Dr. Steffen nor Offel complained that Plaintiff was not working fast enough. In fact, Plaintiff finished the Employee Handbook within the time frame set by Dr. Steffen. (See, *Affidavit of Vicki Lynn Glasco*, ¶ 5, attached hereto as "Ex. 3.")

42. Undisputed in part and disputed in part. Dr. Steffen never criticized Plaintiff for focusing on staffing. Instead, he pushed her to focus on

staffing, not unemployment claims or the employee handbook. (See, *Affidavit of Vicki Lynn Glasco*, ¶¶ 5, 19-20, attached hereto as "Ex. 3.")

43.   Undisputed in part and disputed in part.  Plaintiff admits that Jennifer Roberts so testified.  However, there were numerous reasons given for Plaintiff's termination.  Dr. Steffen initially told Plaintiff that the dynamics just were not working right.  (See, *Affidavit of Vicki Lynn Glasco*, ¶ 25, attached hereto as "Ex. 3.")  The letter of reference that he gave her said that her position had been eliminated.  (See, *Affidavit of Vicki Lynn Glasco*, *Letter of Reference*, Ex. A, attached hereto as "Ex. 3.")[2]  Patricia Snyder was told by Patrick Corbett that Plaintiff was fired for being responsible for hiring too many blacks at the Lewisville, Texas location.  (See, *Affidavit of Patricia Snyder*, ¶ 5, attached hereto as "Ex. 5.")

## ARGUMENT AND AUTHORITIES

### I.   Applicable standards for retaliatory discharge

A plaintiff may establish a prima facie case for retaliation by showing:

> . . . she engaged in protected opposition to Title VII discrimination; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.

Fye v. Oklahoma Corp. Comm'n, 516 F.3d 1217, 1227 (10th Cir. 2008) (citing Meiners v. Univ. of Kan., 359 F.3d 1222, 1229 (10th Cir 2004)).  If the plaintiff establishes a prima facie case, then the employer must offer a legitimate, non-retaliatory reason for the

---

[2]     Plaintiff also submits that the Letter of Reference is an admission against party opponent by Dr. Steffen. See Fed. R. Evid. 801(d)(2)(D).

adverse employment action. Id. Assuming the employer does so, then the burden shifts back to the employee to show that the employer's reasons are merely pretextual. Id. Pretextual means "unworthy of belief." The Tenth Circuit has stated that:

> Pretext can be shown by "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'"

Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting Olson v. General Elect. Astrospace, 101 F.3d 947, 951-52 (3d Cir. 1996)).

## II. Plaintiff has established a prima facie case of retaliatory discharge.

Defendants contend that Plaintiff failed to place My Dentist on notice that she was opposing an illegal employment practice, that she only gave a "blank stare." Nothing could be farther from the truth. There are three instances when Plaintiff voiced her opposition to illegal racial discrimination. For all this opposition, she was met with termination after a short tenure at My Dentist.

First, when Plaintiff inquired about the Skype interview Offel had with LenoraTatum, an African-American woman, Offel responded that there were too many blacks already at the Lewisville, Texas location and that she had long, gross fingernails. Plaintiff said, "Well, race is irrelevant and just ask her to cut her nails." Offel just walked away. Concerned with Offel's response, Plaintiff immediately went to Dr. Steffen, along with Jennifer Roberts, to express her concern to him regarding these comments. His response was no better than Offel's. He told Plaintiff that she had her answer. He also stated there were too many blacks in Lewisville and that they were ugly. When Plaintiff

attempted to point out Ms. Tatum's qualifications, he simply changed the subject to ask her if she had family in the Lewisville area.  Plaintiff responded that she did and wanted to help with the interviews for the Lewisville location.  Plaintiff was never given an opportunity to do so.  (See, *Plaintiff Vicki Glasco's Responses to Defendant's First Set of Interrogatories*, pg. 19-20, attached hereto as "Ex. 1"; *Affidavit of Vicki Lynn Glasco*, ¶¶ 10-12, attached hereto as "Ex. 3.")

Second, on her first day, Dr. Steffen made the remark that you would not hire a black to work in Beverly Hills or a white to work in Compton.  Plaintiff responded by saying, "Why wouldn't I?  I would hire the best qualified."  This was a clear opposition to any racial discrimination.  (See *Plaintiff Vicki Glasco's Responses to Defendant's First Set of Interrogatories*, pg. 27-28, attached hereto as "Ex. 1"; *Affidavit of Vicki Lynn Glasco*, ¶¶ 8-9, attached hereto as "Ex. 3.")

Third, when Dr. Steffen remarked that two African-American regional managers "were hiring too many of their own kind", meaning too many blacks, Marian Columbus was required to conduct a second interview with all candidates that these regional managers wished to hire.  Plaintiff pointed out this requirement was not placed on the white, male regional manager.  This was a direct, pointed remark clearly meant to curtail Dr. Steffen's actions.  This conversation happened in October 2011.  (See, *Deposition of Vicki Lynn Glasco*, pg. 103, ln. 13-25, 104, ln. 2-15, attached hereto as "Ex. 2"; *Affidavit of Vicki Lynn Glasco*, ¶ 13, attached hereto as "Ex. 3.")

Plaintiff's specific complaints about racial discrimination are sufficient to place Defendants on notice that she was in opposition to their unlawful employment practices.

11

She was not required to make any formal complaint. "Protected opposition can range from filing formal charges to voicing informal complaints to superiors." Hertz v. Luzenac Am., Inc., 370 F.3d 1014, 1015 (10th Cir. 2004). Thus, it is clear that Plaintiff did much more than give just a "blank stare" as opposition to the unlawful practices at My Dentist. She voiced open resistance to them on numerous occasions during her short tenure at My Dentist. In short, she can show she engaged in protected opposition.

Next, Defendants argue that Plaintiff cannot establish a causal connection between her protected opposition and her termination. Temporal proximity between the opposition and the discrimination has been found to be in itself sufficient to infer a causal connection. Barone v. United Airlines, Inc., 355 Fed. Appx. 169, 184 (10th Cir. 2009) (concluding that one month from report of discriminatory payroll practices and retaliation was sufficient to infer causal connection). See also, EEOC v. PVNF, L.L.C., 487 F.3d 790, 804 (10th Cir. 2011) ("We have previously held that such temporal proximity, alone, is sufficient to allow an inference of the existence of a causal connection between the two events.")

Here, while it is true that one instance of Dr. Steffen's racially discriminatory comments were made on one of Plaintiff's first days of work, the others happened just within weeks of her termination. For instance, the incident involving Lenora Tatum and Offel and Dr. Steffen's outrageous remarks about "too many blacks" in the Lewisville location were made in late December 2011, and Plaintiff was terminated in early January 2012. (See, *Plaintiff Vicki Glasco's Responses to Defendant's First Set of Interrogatories*, pg. 19-20, attached hereto as "Ex. 1"; *Affidavit of Vicki Lynn Glasco*, ¶¶

12

10-12, attached hereto as "Ex. 3.")  Also, the incident of Dr. Steffen saying that the African-American regional managers were hiring "too many of their kind" happened in October 2011, and Plaintiff was fired in early January 2012. (See, *Affidavit of Vicki Lynn Glasco*, ¶ 13, attached hereto as "Ex. 3.") Just the close temporal proximity of these events is sufficient to infer a causal connection.

Plaintiff has established her prima facie case, and Defendants' Motion for Summary Judgment should be denied.

## III.   Plaintiff has established pretext

The Tenth Circuit has stated:

> Pretext can be shown by "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'"

Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir 1997).

The Court should find that the proffered nondiscriminatory reason for terminating Plaintiff (poor job performance) is pretextual because it is one of many mutually inconsistent reasons offered. There have been numerous reasons given for Plaintiff's termination: (1) poor job performance; (2) the dynamics were not right; (3) the HR Manager position had been eliminated; and (4) Plaintiff was responsible for hiring too many blacks in the Lewisville, Texas location.

The first is disproven by the fact that Dr. Steffen gave Plaintiff a letter of reference. It states that: "Vicki did a very good job for My Dentist and did bring a lot to the organization. I do recommend Vicki for any HR position that she may aspire to."

13

(See, *Affidavit of Vicki Lynn Glasco, Letter of Reference*, Ex. A, attached hereto as "Ex. 3.") Next, there is the reason given by Dr. Steffen when he actually terminated Plaintiff — that the dynamics were not working. (See, *Affidavit of Vicki Lynn Glasco*, ¶ 25, attached hereto as "Ex. 3.") Then there is the reason stated in the reference letter given to Plaintiff – that the HR position had been eliminated. (See, *Affidavit of Vicki Lynn Glasco, Letter of Reference*, Ex. A, attached hereto as "Ex. 3.") This is belied by the fact that My Dentist hired another HR manager a few months later. Almost immediately after Plaintiff was terminated, her duties were assumed by Patricia Snyder. A few short months later, Patricia Snyder was given the job title of HR manager. (See, *Deposition of Lyndsay Hagedorn*, pg. 32, ln. 9-25; pg. 33, ln. 1-10, attached hereto as "Ex. 4".) Finally, Plaintiff was blamed for hiring too many blacks at the Lewisville, Texas location. (See, *Affidavit of Patricia Snyder*, ¶ 5, attached hereto as "Ex. 5.")

In a case on point, the Court of Appeals for the Tenth Circuit reversed the district court's grant of summary judgment for defendant by concluding that the plaintiff had shown evidence of the employer's inconsistent reasons for termination and held that those reasons were sufficient to raise an issue of pretext. Hare v. Denver Merch. Mart, Inc., 255 Fed. Appx. 298, 305 (10th Cir. 2007). As here, one supervisor testified that the plaintiff was terminated because his position was eliminated. Another testified that he had poor job performance. The Tenth Circuit noted that "the reasons stated by the . . . management team were not only different but mutually inconsistent. . . . [C]ontradictions of this sort are sufficient to establish pretext for purpose of summary judgment." Id.

Plaintiff submits that Hare is dispositive in this instance. In this case, just as in Hare, Defendants have given mutually inconsistent reasons for Plaintiff's termination. See also, Paup v. Gear Prods., 327 Fed. Appx. 100, 114 (10th Cir. 2009) (reversing summary judgment where employees showed inconsistent reasons for termination and therefore established pretext); Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2002) ("A company may have several legitimate reasons to dismiss an employee. But when a company, at different times, gives different and arguably inconsistent explanations, a jury may infer that the articulated reasons are pretextual."); Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext."), opinion amended by 97 F.3d 833 (6th Cir. 1996); Kobrin v. Univ. of Minn., 34 F.3d 698, 703 (8th Cir. 1994) ("Substantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext.").

In this matter, the reasons for Plaintiff's termination have changed significantly as litigation has progressed. On the day Plaintiff was terminated, the reason given was that the dynamics were not working. By January 17, 2012, the date of the letter of reference, the reason given is that her position had been eliminated. By the time the case had progressed to court, the reason was poor performance. Then, there is the explanation that she was blamed for hiring too many blacks at Lewisville. From this circumstantial evidence, there is sufficient evidence from which a jury could find that the shifting reasons given for Plaintiff's termination are pretextual.

Moreover, the Tenth Circuit has stated "that close temporal proximity is a factor in showing pretext, yet is not alone sufficient to defeat summary judgment." Annett v. Univ. of Kan., 371 F.3d 1233, 1240 (10th Cir. 2004). Here, Plaintiff does not rest only on the close proximity of her opposition to My Dentist's unlawful employment practices. She also relies upon the inconsistent reasons articulated for her termination. Lobato v. N.M. Env't Dept., 733 F.3d 1283, 1294 (10th Cir. 2013) ("Thus, close temporal proximity can support a finding of pretext only in combination with other evidence of pretext.")

There is close temporal proximity of Plaintiff's opposition to racial discrimination and her firing. In late December 2011, Plaintiff actively opposed Defendants' decision not to hire Ms. Tatum because there were too many blacks in the Lewisville, Texas location of My Dentist by first voicing her opposition to Offel. When that got her nowhere, she took her concerns to Dr. Steffen who responded that she had her answer and also that there were too many ugly blacks in Lewisville. Plaintiff told him that race was irrelevant and offered to conduct interviews herself. This was to no avail. Plaintiff was fired a few short weeks later on January 5, 2012. (See, Plaintiff Vicki Glasco's Responses to Defendant's First Set of Interrogatories, pg. 19-20, attached hereto as "Ex. 1"; Affidavit of Vicki Lynn Glasco, ¶¶ 10-12, attached hereto as "Ex. 3.")

This was not the only instance of Plaintiff's opposition to Defendants' discriminatory practices. When Dr. Steffen remarked that the two African American regional managers were hiring "too many of their own kind", meaning too many blacks, and directed Marian Columbus to conduct second interviews of candidates those regional managers wished to hire, Plaintiff pointed out that such a requirement was not placed on

16

the white male regional manager. This happened in mid to late October 2011. (See, *Deposition of Vicki Lynn Glasco*, pg. 104, ln. 2-15, attached hereto as "Ex. 2"; *Affidavit of Vicki Lynn Glasco*, ¶ 13, attached hereto as "Ex. 3.")

Plaintiff again opposed Defendants' discriminatory practices by pointing out that race was irrelevant and stating that she would hire the most qualified candidate in response to Dr. Steffen's comment that you would not hire a black in Beverly Hills and a white in Compton. This was meant to prove his point that there should not be too many minorities at the Casady location as it caters to a wealthier clientele. (See, *Plaintiff Vicki Glasco's Responses to Defendant's First Set of Interrogatories*, pg. 27-28, attached hereto as "Ex. 1"; *Affidavit of Vicki Lynn Glasco*, ¶¶ 8-9, attached hereto as "Ex. 3.")

Put together, Plaintiff's evidence of temporal proximity and mutually inconsistent reasons for Plaintiff's termination create a question of fact that Defendants' proffered reasons for her termination amount to a pretext unworthy of belief and sufficient to defeat summary judgment. Pastran v. K-Mart Corp., 210 F.3d 1201, 1206 (10th Cir. 2000) ("In combination with the evidence of temporal proximity, this evidence--although far from conclusive--raises an issue of material fact as to whether Defendant offered a pretextual reason for terminating Plaintiff."); Champion v. Spencer Gifts, L.L.C., 2009 U.S. Dist. LEXIS 88704, 2009 WL 3131461 (D. N.J.) ("Considered collectively, however, Plaintiff's evidence of temporal proximity, antagonism, and inconsistencies regarding the reasons for his termination tip the scales such that his case must be presented to a jury.").

Plaintiff has established sufficient facts to show that Defendants' articulated reason for discharge (poor performance) is pretextual and unworthy of belief, and Defendants' Motion for Summary Judgment should be denied.

## IV.   Plaintiff concedes that Burk torts have been abolished by statute

Defendants correctly point out that the Burk tort has been abolished by statute in Oklahoma. See, 25 O.S. §§ 1101(a), 1350(A). See also, Peters v. Black Tie Value Parking Serv., 2013 U.S. Dist. LEXIS 5203, 2013 WL 149773 (W.D. Okla.) ("The remedies abolished include Burk claims."). Plaintiff concedes that her public policy claims accrued after the amendment of the Oklahoma Anti-Discrimination Act.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully submits that Defendants' Motion for Summary Judgment must be denied.

Respectfully submitted,


/s/  April B. Eberle
Sarah J. Timberlake, OBA #7532
April B. Eberle, OBA # 18327
ABOWITZ, TIMBERLAKE & DAHNKE, P.C.
105 North Hudson, Tenth Floor
Post Office Box 1937
Oklahoma City, Oklahoma 73101-1937
Telephone:  (405) 236-4645
Facsimile:  (405) 239-2843
Email: sjt@abowitzlaw.com
       abe@abowitzlaw.com
       mainmail@abowitzlaw.com
**Attorneys for Plaintiff, Vicki L. Glasco**

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2014, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Robert S. Lafferrandre
Randall J. Wood
Jessica L. Speegle

/s/   April B. Eberle
April B. Eberle